William Jacob Douglass
**DOUGLASS LAW**
292 South La Cienega Boulevard, Suite 207
Beverly Hills, CA 90211
Telephone: (323) 379-5890
Facsimile: (323) 433-1913
jake@douglass.law

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiff
ROUNDIN3RD SPORTS BAR LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ROUNDIN3RD SPORTS BAR LLC, | Case No.  2:20-cv-5159-SVW-PLA |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| SENTINEL INSURANCE COMPANY, LIMITED, | |
| Defendant. | |

Plaintiff Roundin3rd Sports Bar LLC ("Plaintiff") brings this Complaint against Defendant Sentinel Insurance Company, Limited ("Defendant") and, upon information and belief, alleges as follows:

### NATURE OF THE CASE

1.     This is a civil action seeking declaratory relief arising from Plaintiff's contracts of insurance with Defendant.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 1 -                    Case No.: 2:20-cv-5159-SVW-PLA
FIRST AMENDED COMPLAINT

2.     In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in store businesses must shut down on March 16, 2020, Plaintiff's restaurant has suffered business loss.

3.     Plaintiff's insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

4.     As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and Defendant. Plaintiff has suffered business losses at each restaurant in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6.     This Court has personal jurisdiction over Defendant. Defendant has engaged in substantial business in this District, including the formation of the Policies underlying Plaintiff's claims, and Defendant has therefore personally availed themselves of jurisdiction in this District.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the formation of the Policies underlying Plaintiff's claims.

## PARTIES

8.     Plaintiff is a limited liability company that owns and operates a restaurant, Roundin3rd Sports Bar, located 4133 E Anaheim Street, Long Beach, CA 90804. Plaintiff is owned by Patrick Malone, Geoffery Rau, and Susan Hartert, who are all citizens of California.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 2 -                    Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

9.     Defendant Sentinel Insurance Company, Limited ("Sentinel") is an insurance company affiliated with The Hartford that insured Plaintiff for business interruption insurance. Defendant Sentinel is headquartered at One Hartford Plaza, Hartford, Connecticut 06155. Defendant Sentinel is a citizen of Connecticut.

## FACTUAL ALLEGATIONS

### I.    Insurance Coverage

10.    At all relevant times, Defendant issued a policy to Plaintiff to cover business interruption loss from November 1, 2019 until November 1, 2020 for its restaurant at 4133 E Anaheim Street, Long Beach, CA 90804 (the "Insured Property"). The policy number is 57 SBA BM3684. This policy was intended to cover losses to business interruption. *See* Declaration, attached hereto as Exhibit 1 (the "Policy").

11.    The Policy is currently in full effect in providing, among other things, personal property, business income and extra expense, contamination coverage and additional coverage.

12.    Plaintiff submitted a claim for a date of loss pursuant to its Policy seeking coverage under this policy. Defendant rejected Plaintiff's claim for coverage for business loss and business interruption and other claims, contending, *inter alia,* that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff purportedly is not entitled to coverage for the losses and damages. Defendant also claimed the Policy does not cover losses due to the Virus Exclusion Clause.

13.    Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

14.    Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 3 -                           Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Insured Property. This additional coverage is identified as coverage under "Civil Authority."

15.    The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means coverage for all covered losses, including but not limited to direct physical loss or direct physical damage, unless the loss is specifically excluded or limited in the Policy.

16.    An all-risk Policy such as that purchased by Plaintiff is one that protects against catastrophic events, such as the one occurring now, involving the global COVID-19 Pandemic that has resulted in the widespread, omnipresent and persistent presence of COVID-19 in and around Plaintiff's Insured Property, including adjacent properties. Coverage under an all-risk Policy is to be broadly interpreted and provided.

17.    The Policy also covers for damages resulting from business interruption when there is property damage, which is standard in most all-risk commercial property insurance policies, along with coverage for extra expenses.

18.    Plaintiff purchased, among other coverages, business interruption coverage for closure by Order of Civil Authority.

19.    The exclusion for viruses does not apply to this pandemic. The Policy does not identify any exclusions for a pandemic.

20.    Based upon information and belief, the Policy provided by Defendant included language that is essentially standardized language adopted from and/or developed by the Insurance Services Office ("ISO"). The ISO, founded in 1971, provides a broad range of services to the property and casualty insurance industry. In addition to form policies, ISO collects and manages databases containing large amounts of statistical, actuarial, underwriting, and claims information, fraud-identification tools, and other technical services. ISO describes itself as follows: "ISO

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 4 -

Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

provides advisory services and information to many insurance companies. . . . ISO develops and publishes policy language that many insurance companies use as the basis for their products." ISO General Questions, Verisk, https://www.verisk.com/insurance/about/faq/ (last visited June 5, 2020); *see also* Insurance Services Office (ISO), Verisk, https://www.verisk.com/insurance/brands/iso/ (last visited June 5, 2020).

21. The language in the Policy is "adhesionary" in that Plaintiff was not a participant in negotiating or drafting its content and provisions.

22. Plaintiff was not a participant in negotiating or drafting the Policy's content and provisions. Plaintiff possessed no leverage or bargaining power to alter or negotiate the terms of the Policy, and more particularly, Plaintiff had no ability to alter, change or modify standardized language derived from the ISO format.

23. Upon information and belief, the Virus Exclusion in the Policy was developed by the ISO in response to the SARS outbreak that occurred in or around 2002-2004, which was not a Pandemic and not a global Pandemic like the present COVID-19 Pandemic, and therefore was never intended to exclude coverage for a circumstance as presented in this matter.

24. Further, the Virus Exclusion was first permitted by state insurance departments due to misleading and fraudulent statements by the ISO that property insurance policies do not and were not intended to cover losses caused by viruses, and so the Virus Exclusion offers mere clarification of existing law. To the contrary, before the ISO made such baseless assertions, courts considered contamination by a virus to be physical damage. Defendant's use of the Virus Exclusion to deny coverage here shows that the Virus Exclusion was fraudulently adopted, adhesionary, and unconscionable. *See* https://www.propertycasualty360.com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/ (last visited June 12, 2020).

25. Upon information and belief, the Virus Exclusion in the Policy was never intended by the ISO nor Defendant to pertain to a pandemic like the present

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 5 -                                  Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

global COVID-19 Pandemic because the ISO and Defendant define "virus" and "pandemic" as used in their policies differently than how those terms might be normally used.

26.     Upon information and belief, the Virus Exclusion was only intended to cover discrete instances of infection or contamination by a virus as a covered cause of loss, not to direct physical loss or damage caused by a pandemic.

27.     Upon information and belief, the ISO and the insurance industry, including Defendant, do not consider the term "virus" as used in the Virus Exclusion to include a pandemic in which there is omnipresent contamination by a virus as a covered cause of loss.

28.     In fact, the ISO, when seeking approval for the "Exclusion of Loss Due to Virus or Bacteria," acknowledged that it was intended for losses and damage associated with "disease" and actual "contamination" of the insured property. *See* ISO Circular LI-CF-2006-175, New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria, ISO (July 6, 2006), https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf ("In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms."). Other insurers have been much more specific in drafting and specifically using the "pandemic" language. *See, e.g.*, *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016) ("The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, pandemic, influenza, plague, SARS, or Avian Flu.").

29.     Plaintiff purchased the Policy with an expectation that it was purchasing a policy that would provide coverage in the event of business interruption and extra expenses, such as that suffered by Plaintiff as a result of COVID-19.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 6 -

Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

30.     At no time had Defendant, or their agents, notified Plaintiff that the coverage that Plaintiff had purchased pursuant to an all-risk policy that included business interruption coverage, had exclusions and provisions that purportedly undermined the very purpose of the coverage, providing benefits in the occurrence of business interruption and incurring extended expenses.

31.     The reasonable expectations of Plaintiff, i.e., an objectively reasonable interpretation by the average Policyholder of the coverage that was being provided, was that the business interruption coverage included coverage when a civil authority forced closure of the business for an issue of public safety such as that involving the COVID-19 pandemic in the immediate area surrounding the Insured Properties.

32.     The purported exclusions of the Policy that Defendant has or is expected to raise in defense of Plaintiff's claim under the Civil Authority coverage of the Policy are contradictory to the provision of Civil Authority Order coverage and violate public policy as a contract of adhesion and hence are not enforceable against Plaintiff.

33.     Regulatory estoppel bars Defendant from relying on the Virus Exclusion because of its conduct and any associated conduct of the ISO to inappropriately obtain the permission of state insurance commissioners or departments to include the language of the Virus Exclusion in its policies.

34.     Access to Plaintiff's business was prohibited by Civil Authority Orders, and the Policy provides for coverage for actual loss of business sustained and actual expenses incurred as a covered loss caused by the prohibitions of the Civil Authority Orders in the area of Plaintiff's Insured Property.

35.     The Virus Exclusion has limited applicability as it is intended to apply only to claims based on personal injury that it causes and not intended to apply to other types of losses that can be associated with an underlying virus such as those claimed by Plaintiff here involving business losses where no personal injury is claimed to have occurred.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999
- 7 -
Case No.: 2:20-cv-5159-SVW-PLA
FIRST AMENDED COMPLAINT

36. The virus and bacterium exclusions do not apply because Plaintiff's losses were not solely caused by a virus, bacterium or other microorganism. Instead, Plaintiff's losses were caused by the entry of Civil Authority Order to mitigate the spread of COVID-19.

37. The Civil Authority Order prohibited access to Plaintiff's Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions described above resulting from COVID-19. As a result of the presence of COVID-19 and the Civil Authority Order, Plaintiff lost Business Income and incurred Extra Expense.

38. Plaintiff is not seeking coverage because of personal injuries caused by the virus, but rather coverage for property damage, business income loss, and extra expense.

39. The Policy does not exclude the losses suffered by Plaintiff, and therefore, the Policy does provide coverage for the losses incurred by Plaintiff.

40. Based on information and belief, Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage.

41. Factual issues related to direct physical loss or damage to Plaintiff's Insured Property and/or surrounding property and the scope and validity of the Virus Exclusion will require development of a factual record through discovery. Plaintiff also intends to serve subpoenas on the ISO and Department of Insurance regarding the development of the Virus Exclusion.

II.     **The Coronavirus Pandemic**

42. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the business.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 8 -                      Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

43.     The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

44.     The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

45.     On March 11, 2020 the World Health Organization ("WHO") made the assessment that COVID-19 shall be characterized as a pandemic. *See* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

46.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days. Human coronaviruses can remain infectious on inanimate surfaces at room temperature for up to 9 days. At a temperature of 30 degrees Celsius (86 degrees F) or more the duration of persistence is shorter. *See* https://www.ncbi.nim.nih.gov/pmc/articles/PMC7132493/ (last visited July 16, 2020).

47.     A particular challenge with the novel coronavirus is that it is possible for a person to be infected with COVID-19 but be asymptomatic. Thus, seemingly healthy people unknowingly spread the virus via speaking, breathing, and touching objects.

48.     While infected droplets and particles carrying COVID-19 may not be visible to the naked eye, they are physical objects which travel to other objects and cause harm. Habitable surfaces on which COVID-19 has been shown to survive

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 9 -                                    Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

include, but are not limited to, stainless steel, plastic, wood, paper, glass, ceramic, cardboard, and cloth.

49.   The virus is thought to spread mainly from person to person: between people who are in close contact with one another (within about 6 feet); through respiratory droplets produced when an infected person coughs, sneezes or talks; these droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs; and some recent studies have suggested that COVID-19 may be spread by people who are not showing symptoms. *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

50.   The CDC has noted that "[i]t may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes, but this is not thought to be the main way the virus spreads." *See* https://www.cdc.gov/foodsafety/newsletter/food-safety-and-Coronavirus.html.

51.   The CDC has said that the best way to prevent illness is to avoid being exposed to this virus and that steps can be taken to slow its spread: Maintain good social distance (about 6 feet). This is very important in preventing the spread of COVID-19; Wash your hands often with soap and water. If soap and water are not available, use a hand sanitizer that contains at least 60% alcohol; Routinely clean and disinfect frequently touched surfaces; and Cover your mouth and nose with a cloth face covering when around others.

52.   "The primary and most important mode of transmission for COVID-19 is through close contact from person-to-person. Based on data from lab studies on COVID-19 and what we know about similar respiratory diseases, it may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes, but this isn't thought to be the main way the virus spreads."

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

1  https://www.cdc.gov/media/releases/2020/s0522-cdc-updates-covid-
2  transmission.html (last edited May 23, 2020).

3      53.    Compliance with the CDC recommendations, along with compliance
4  with the Civil Authority Orders, effectively made it impossible for Plaintiff to operate
5  its business in the usual and customary manner causing the business to suffer business
6  losses and added expenses as provided for and covered under the Policy

7      54.    China, Italy, France, and Spain have implemented the cleaning and
8  fumigating of public areas prior to allowing them to re-open publicly due to the
9  intrusion of microbials.

10      55.    A French Court has determined that business interruption coverage
11 applies      to      the      COVID-19      Pandemic.      *See*
12 https://www.insurancejournal.com/news/international/2020/05/22/569710.htm.

13      56.    Similarly, on September 15, 2020, the United Kingdom's High Court
14 found that the 'disease' and/or 'denial of access' clauses in the various insurance
15 policy wordings provide coverage in the circumstances of the COVID-19 pandemic,
16 and that the trigger for coverage caused policyholders' losses.  The High Court
17 further noted:

18
19          The fact that a provision in a contract is expressed as an
            exception does not necessarily mean that it should be
20          approached with a pre-disposition to construe it narrowly.
            Like any other provision in a contract, words of exception
21          or exemption must be read in the context of the contract as
            a whole and with due regard for its purpose. As a matter
22          of general principle, it is well established that that if one
23          party, otherwise liable, wishes to exclude or limit his
            liability to the other party, he must do so in clear words;
24          and that the contract should be given the meaning it would
            convey to a reasonable person having all the background
25          knowledge which is reasonably available to the person or
26          class of persons to whom the document is addressed.
27
28 https://www.fca.org.uk/publication/corporate/bi-insurance-test-case-judgment.pdf.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 11 -                    Case No.: 2:20-cv-5159-SVW-PLA
FIRST AMENDED COMPLAINT

57.     The determination by a Court of another country that coverage exists is consistent with public policy that in the presence of a worldwide Pandemic, such as COVID-19, businesses that possess business interruption insurance coverage should recover their losses from the insurance carriers.

### III.   Civil Authority

58.     On March 4, 2020, the State of California declared a State of Emergency for the entire state of California as a result of COVID-19.

59.     On March 11, 2020, the State of California set restrictions on large gatherings.

60.     On March 16, 2020, the State of California prohibited all gatherings regardless of size. This order effectively shut down all non-essential businesses.

61.     On March 17, 2020, the State of California issued a stay at home order that all non-essential workers must stay at home as a result of COVID-19. This order has been extended indefinitely.

62.     On May 29, 2020, Plaintiff's business was able to begin re-opening.

63.     Plaintiff's business was unable to operate due to the stay-at-home orders for public safety issued by the State of California (the "Orders"). Plaintiff has submitted a claim to its insurance carriers related to such losses, but Defendant denied Plaintiff's claims.

64.     Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff.

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. Business interruption insurance, I'd like to see these insurance companies—you know you have people that have paid.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

FIRST AMENDED COMPLAINT                    Case No.: 2:20-cv-5159-SVW-PLA

***When I was in private I had business interruption.*** When
my business was interrupted through a hurricane or
whatever it may be, I'd have business where I had it, I
didn't always have it, sometimes I had it, sometimes, I
had a lot of different companies. But if I had it I'd expect
to be paid. You have people. I speak mostly to the
restaurateurs, where they have a restaurant, they've been
paying for 25, 30, 35 years, business interruption.
They've never needed it. All of a sudden they need it.
And I'm very good at reading language. I did very well in
these subjects, OK. And I don't see the word pandemic
mentioned. Now in some cases it is, it's an exclusion. But
in a lot of cases I don't see it. I don't see it referenced.
And they don't want to pay up. I would like to see the
insurance companies pay if they need to pay, if it's fair.
And they know what's fair, and I know what's fair, I can
tell you very quickly. But business interruption insurance,
that's getting a lot money to a lot of people. And they've
been paying for years, sometimes they just started paying,
***but you have people that have never asked for business
interruption insurance, and they've been paying a lot of
money for a lot of years for the privilege of having it,
and then when they finally need it, the insurance
company says 'we're not going to give it.' We can't let
that happen***.

*See* https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020).

65. The President is articulating a few core points:

a. Business interruption is a common type of insurance.

b. Businesses pay in premiums for this coverage and should reasonably
expect they'll receive the benefit of the coverage.

c. This pandemic should be covered unless there is a specific exclusion
for pandemics.

d. If insurers deny coverage, they would be acting in bad faith.

66. These Orders and proclamations, as they relate to the closure of all "non-
life- sustaining businesses," evidence an awareness on the part of both state and local
governments that COVID-19 causes damage to property. This is particularly true in
places where business is conducted, such as Plaintiff's, as the requisite contact and
interaction causes a heightened risk of the property becoming contaminated.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 13 -                                          Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

67.     Plaintiff did not have the ability or right to ignore these Civil Authority Orders and proclamations as doing so would expose Plaintiff to fines and sanctions.

68.     Plaintiff's adherence to the requirements of these Civil Authority Orders and proclamations was in furtherance of protecting the public, the public good, public policy in favor of minimizing the risk of spread of COVID-19, and complying with the Civil Authority Orders.

## IV.   Impact on Plaintiff

69.     As a result of the Orders referenced herein, Plaintiff shut its doors to its restaurant.

70.     Plaintiff's business loss occurred when the State of California issues its order on March 16, 2020 banning any gatherings at an establishment.

71.     Prior to March 16, 2020, Plaintiff's business was open.

72.     In light of the Plaintiff's inability to safely use or operate its Insured Property due to the COVID-19 Pandemic, as well as state and local civil authority Orders requiring all non-life-sustaining businesses to cease operations and close all physical locations due to physical loss and damage caused by the COVID-19 Pandemic, Plaintiff was forced to suspend operations of its business.

73.     Access to Plaintiff's business was prohibited by civil authority Orders.

74.     As a consequence of the Orders, Plaintiff's property was physically impacted, such that it could not be used for its intended purpose. Therefore, the novel coronavirus has caused "direct physical loss of or damage to" Plaintiff's property insured under the Policy as well as surrounding property.

75.     Plaintiff has suffered "direct physical loss of or damage" to its property due to the COVID-19 Pandemic.  Among other things, COVID-19 made the Insured Property unusable in the way that it had been used before the Pandemic, rendered the property substantially unusable and uninhabitable, intruded upon the property, damaged the property, prevented physical access to and use of the property, and caused a suspension of business operations at the property.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 14 -                                    Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

76.     The COVID-19 Pandemic also caused physical loss and damage to property near Plaintiff's Insured Property.

77.     This loss is physical. Instead of being able to operate Plaintiff's business normally, the Insured Property was required to physically alter and drastically reduce operations, and even to close entirely.  To do anything else would lead to the emergence or reemergence of COVID-19 at the location.  Given the widespread prevalence of COVID-19, even limited use of the Insured Property was not reasonably safe for extended periods. The high probability of illness and contamination prevents the full physical use of the property.

78.     Plaintiff's Insured Property is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

79.     Businesses like Plaintiff's are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain for far longer as compared to a facility with open-air ventilation.

80.     Plaintiff's Insured Property is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another and because the nature of the business exposes people to high levels of respiratory droplets and fomites being released into the air of the property.

81.     Because of the nature of COVID-19 as described above, relating to its persistence in locations and the prospect of causing asymptomatic responses in some people, the risk of infection to persons is not only high, but could cause persons with asymptomatic responses to then come into contact with others who would not be so fortunate as to suffer merely an asymptomatic response, and instead suffer serious illness.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 15 -                           Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

82.     The Civil Authority Orders entered by the state and local government were in the exercise of authority to protect the public and minimize the risk of spread of disease.

83.     Even with the entry of these Civil Authority Orders there remained physical impact not only in and within Plaintiff's business property but in and around the surrounding location of Plaintiff's business property in light of COVID-19 presence not being detectable other than through microscopic means, and occurrence of illness.

84.     The entry of the Civil Authority Orders to mitigate health risks to the public by attempting to prevent COVID-19 contamination through the closing businesses and ordering persons to stay at home resulted in a physical impact on Plaintiff's business and Insured Property.

85.     The virus is physically impacting Plaintiff. Any effort by Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

86.     Plaintiff specifically sought coverage for business interruption losses and extra expenses and paid premiums for such coverage with an expectation that the Policy provided such coverage, with no disclosures to the contrary being made to Plaintiff by Defendant or their agents.

87.     A declaratory judgment determining that the coverage provided under the Policy exists and is necessary so as to prevent Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 16 -                        Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

## CAUSE OF ACTION

## DECLARATORY RELIEF

88.　Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

89.　The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

90.　An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, Defendant disputes and denies that:

a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here. These exclusions do not apply to the pandemic;

d. The Orders trigger coverage;

e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in California due to physical loss/or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters. The Policy does not exclude coverage for the pandemic;

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 17 -

Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Insured Property or immediate area of the Insured Property; and

g. Resolution of the duties, responsibilities and obligations of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

91.   Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

92.   Plaintiff further seeks a Declaratory Judgment to affirm that the Orders trigger coverage.

93.   Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in the State of California due to physical loss or damage from the Coronavirus and that the Policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

b. For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

c. For a declaration that the Orders trigger coverage under the Policy.

d. For a declaration that Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in California due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 18 -

Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

e.  For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at Plaintiff's Insured Property or the immediate area of Plaintiff's Insured Property.

f.  For such other relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands trial by jury.

Dated: October 28, 2020                      Respectfully submitted,

*/s/ William Jacob Douglass*

William Jacob Douglass
**DOUGLASS LAW**
292 South La Cienega Boulevard, Suite 207
Beverly Hills, CA 90211
Telephone: (323) 379-5890
Facsimile: (323) 433-1913
jake@douglass.law

Arnold Levin, Esq. (Pa. Bar No. 02280)
Laurence Berman, Esq. (Pa. Bar No. 26965)
Frederick Longer, Esq. (Pa. Bar No. 46653)
Daniel Levin, Esq. (Pa. Bar No. 80013)
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq. (PA Bar No: 42845)
Kenneth J. Grunfeld, Esq. (PA Bar No: 84121)
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900

Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq. (PA Bar No: 85752)
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III (Ala. Bar ID:7656M75W)
Rachel N. Boyd (Ala. Bar ID: 6320342)
Paul W. Evans (AL Bar ID: 9270Z18F)
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Attorneys for Plaintiff*

Birka-White Law Offices
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999

- 20 -

Case No.: 2:20-cv-5159-SVW-PLA

FIRST AMENDED COMPLAINT